1  S. Martin Keleti (Bar # 144208)
   KELETI LAW
2  E-mail: s.martin.keleti@gmail.com
   9903 Santa Monica Boulevard, Suite 751
3  Beverly Hills, CA 90212-1671
   Telephone: 323.308.8489
4
5  *Counsel for Plaintiffs and the Proposed class*

   [Additional counsel appear on signature page]
6
7
8              **UNITED STATES DISTRICT COURT**
9              **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| YAN DONG, SARA HADI and JUN IMAIZUMI, individually and on behalf of all others similarly situated, | Case No.: 2:23-CV-09613-JLS-SSC |
| Plaintiffs, | **SECOND AMENDED CLASS ACTION COMPLAINT FOR:** |
| v. | **1. Breach of Implied Warranty;**<br>**2. Violations of CLRA;**<br>**3. Violations of NJCFA; and**<br>**4. Fraud by Omission** |
| TOYOTA MOTOR SALES, U.S.A., INC., a California corporation; TOYOTA MOTOR NORTH AMERICA, INC., a California corporation; | **JURY TRIAL DEMANDED** |
| Defendants. | |

18      Plaintiffs individually for themselves and on behalf of all persons who

19  purchased or leased certain vehicles described *infra* and allege:

20      1.      This Court has jurisdiction over the subject matter of this action

21  pursuant to the class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs and

22  class members are citizens of a state different than Defendants' home states, and the

23  aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

24  Subject matter jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1331.

25  This Court has supplemental subject matter jurisdiction over Plaintiffs' state law

26  claims pursuant to 28 U.S.C. § 1367.

27      2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because

28  certain Defendants are incorporated in this district and state and are "at home" in this

district, Defendants are residents of this district pursuant to 28 U.S.C. § 1391(c)(2) because they are subject to personal jurisdiction in this district. Also, venue is proper in this district pursuant to 18 U.S.C. § 1965.

3.     Plaintiffs and the class owned vehicles equipped with a uniformly defective heating ventilation air condition drain ("HVAC evaporator drain"). The HVAC evaporator drain hose is defectively designed and constructed with improper materials for various vehicles designed, manufactured, distributed, warranted, marketed, sold, and leased by Defendants under the brand name Lexus, including but not limited to the 2015-2022 Lexus CT 200h, Lexus Es 350, Lexus Es 300h, Lexus GX 460, Lexus HS 250h, Lexus LFA, Lexus LS 460, Lexus LS 600hL, Lexus RX 350/450h, Lexus RX 350 (NAP) (collectively, the "class vehicles").

4.     This action is brought to remedy violations of law in connection with Defendants' design, manufacture, marketing, selling, warranting, and servicing of class vehicles. The class vehicles' HVAC Defect makes the HVAC Evaporator drain susceptible to blockages caused by insects. Both the design (including the absence of a duckbill drain or similar existing anti-insect designs utilized in comparable vehicles) and materials' deficiencies (including the absence of an insecticide impregnated drain hose or insecticide hose tip) ("HVAC Defect") of the HVAC Evaporator drain make it highly susceptible to damaging blockages caused by spider webs and other insect structures. The blockages prevent the water associated with a class vehicle's HVAC system from draining outside the class vehicle, thus causing the water to drain inside the passenger compartment. This passenger compartment leakage causes further complications including: (a) an accumulation of mold and mildew residue within the passenger compartment including on seats and in carpeting; (b) an odor within the passenger compartment that impedes on the comfort and enjoyment of the class vehicle; (c) making the class vehicle's passenger compartment unusable for its intended purpose; and, (d) creates safety issues caused by water shorting out the vehicle's electrical system.

5.      Plaintiffs are informed and believe that the HVAC systems and the evaporator drain component are substantially the same from a mechanical engineering standpoint in all class vehicles. All class vehicles use the identical HVAC Water Drain Hose ARINIX® Tip insect repellant tip as discussed in Lexus Technical Service Information Bulletins ("TSIBs") and Toyota Technical Service Bulletins ("TSB") referenced in this complaint.

6.      The HVAC Defect is the result of faulty design, improper materials and defective manufacturing. The existence of spiders and other nesting insects in all 50 states is a fact well-known to Defendants and has been well-known to Defendants long before the production of the class vehicles at issue herein. The solution, which is exceedingly less expensive than the costly repairs, is also well-known to Defendants and has been known long before the production of the class vehicles at issue here commenced. Unfortunately for Plaintiffs and the class members, Defendants concealed the insect intrusion issue, have not performed the necessary corrections in design or materials and have simply denied responsibility when the inevitable drain blockage causes extensive water damage to the class vehicle's interior.  As a result of Defendants' material omissions, Plaintiffs and the class have been injured,

7.      Because of the HVAC Defect, the HVAC evaporator drain is very susceptible to blockages from spider webs, other insect structures and similar foreseeable blocking issues that regularly occur. These blockages cause the HVAC evaporator drain to fail to properly drain water in relation to class vehicle's HVAC system. This failure causes the HVAC water to drain inside of the passenger compartment of class vehicles. The leaking water creates damage and a moist, hospitable environment for the growth of bacteria, fungus, mold, and spores, which then are blown throughout the passenger compartment. This causes the air to have a foul, mildewy smell that is highly unpleasant and can cause respiratory problems and aggravate allergies.

8.      The HVAC Defect is the result of improper and defective design and

materials. For example, after Plaintiffs and class members complained to Defendants about the HVAC Defect, Defendants only then disclosed a materials-based solution—an evaporator drain hose with an insecticide tip—that could have easily been installed during manufacture and prevented interior damage caused by the HVAC Defect. Worse yet, Defendants make class members pay out-of-pocket for the ARINIX® hose tip for the HVAC evaporator drain and the damage caused by the HVAC Defect even if class members' vehicles were under warranty at the time of the leak.

9.    The HVAC Defect inhibits class members' proper and comfortable use of their class vehicles and requires class members to pay for repeated temporary repair services for the HVAC evaporator drain due to the ongoing issues it has caused.

10.    Prior to the manufacture and sale of the class vehicles, Defendants knew of the HVAC Defect through sources available to Defendants, as demonstrated by the multiple TSIBs and TSBs prepared by Defendants and issued to their authorized dealers (who are authorized agents of Defendants by virtue of their relationship for purposes of sales publications, warranty administration and warranty repairs, warranty breach notice, class vehicle defect disclosures, service actions, recall repairs, *inter alia*); field inspections conducted by Defendants; warranty requests made by class vehicle purchasers and lessees; consumer complaints posted on public online vehicle owner forums and social media; previous recalls; and other internal sources unavailable to Plaintiffs without discovery. Yet despite their knowledge, Defendants failed to disclose and actively concealed the HVAC Defect from class members and failed to provide the protective drain hose tip which was available to prevent insect nesting. Defendants conduct is akin to failing to install a full and leak-proof roof on a vehicle despite the knowledge of the inevitability of rain or other inclement weather which would intrude into the vehicle's interior.

11.    Defendants knew or should have known that the "solutions" they charged class members for were simple fixes that should have been performed by Defendants pre-purchase or at the very least, Defendants should have revealed the

HVAC Defect to class members, who then could have paid for the fixes and prevented the more extensive damage the HVAC Defect causes within the passenger compartments of class vehicles, for which Defendants force class members to pay.

12.     Defendants failed to fix the HVAC Defect either preemptively by a materials fix or by providing a repair and fix under warranty for the HVAC Defect and have failed to reimburse class members for the costs associated with the HVAC Defect.

13.     Further, Defendants failed to inform Plaintiffs and class members of the HVAC Defect and thus preventing Plaintiffs and class members from being able to rectify the HVAC Defect before it caused damage to class vehicles.

14.     As a result of Defendants' misconduct, Plaintiffs and class members were harmed and suffered actual damages, in that the class vehicles have manifested, and continue to manifest, the HVAC Defect, and Defendants have not provided a permanent remedy for their HVAC Defect. Furthermore, Plaintiffs and class members incurred, and will continue to incur, out-of-pocket unreimbursed costs and expenses relating to the HVAC Defect.

## PARTIES

**Plaintiff Yan Dong**

15.     Plaintiff Yan Dong ("Dong"), at all relevant times, is and has been a resident and citizen of Santa Clara County, State of California.

16.     Dong owns a 2021 Lexus RX 450h, which was purchased in August of 2023, from an authorized Lexus dealership in Colma, California.

17.     Dong's class vehicle was manufactured, sold, distributed, marketed, and warranted by Defendants.

18.     Dong purchased the class vehicle for her personal, family, and household use.

19.     Dong expected her class vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that her vehicle's HVAC

evaporator drain was susceptible to blockages described in this complaint, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Defendants suggest are necessary to prevent the development of mold. Had Dong known these facts, she would not have bought her class vehicle or would have paid substantially less for it.

20.     Dong first experienced water in her class vehicle's passenger compartment in December of 2023.

21.     As a result of this condition, Dong brought her class vehicle to the local authorized Lexus dealer at which time the local authorized Lexus dealer's service representative admitted to Plaintiff that the blockage was the result of the improper design and materials used and that, had proper materials such as a HVAC evaporator hose with a protective insecticide tip, commonly known as an ARINIX® Tip, been used, the issue would not have occurred. Dong is informed and believes that the ARINIX® Tip part costs approximately $30.

22.     As a result of the HVAC Defect, however, Dong has suffered significant ascertainable loss, as she was quoted a price of approximately $12,000 to remedy the flooded passenger compartment interior water damage caused by the HVAC Defect. Although Dong's automobile insurance company covered a portion of the cost, Dong was required to pay approximately $1,000 as the deductible portion. Defendants failed to disclose the HVAC Defect which would have been material to Plaintiffs and the class. Had Defendants disclosed to Dong that the class vehicles had the defective HVAC evaporator drain, or that she would have to pay for repairs/replacement of the HVAC Defect, she would not have purchased her class vehicle, or would have paid substantially less for it.

23.     At the dealership, Dong requested that Defendants cover the cost of the repair under warranty and Defendants wrongfully refused to extend or cover the damage under the warranty.

**Plaintiff Sara Hadi**

24.     Plaintiff Sara Hadi ("Hadi") is a resident and citizen of Bergen County, State of New Jersey.

25.     Hadi owns a 2022 Lexus RX SUV, which was purchased new in July of 2022, from a local authorized Lexus dealership in New Jersey.

26.     Hadi's class vehicle was manufactured, sold, distributed, marketed, and warranted by Defendants.

27.     Hadi purchased the class vehicle for her personal, family, and household use.

28.     Hadi expected her class vehicle to be of good and merchantable quality and not defective. She had no reason to know, or expect, that her vehicle's HVAC evaporator drain was susceptible to blockages described in this complaint, nor was she aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Defendants suggest are necessary to prevent the development of mold. Had she known these facts, she would not have bought her class vehicle or would have paid substantially less for it.

29.     Hadi first experienced water in her passenger compartment on July 16, 2023, just under a year from when she purchased the vehicle on July 21, 2022.

30.     Hadi was informed at that time by the authorized Lexus dealer from whom she purchased her class vehicle that the blockage was the result of the improper design and materials used, and that had proper materials such as an HVAC evaporator drain hose with a protective insecticide tip (commonly known as an ARINIX® Tip) been used, the issue would not have occurred. Hadi is informed and believes that the ARINIX® Tip part costs approximately $30.

31.     However, as a result of the HVAC Defect, Hadi has suffered significant ascertainable loss, as she was quoted a price of approximately $8,000 to remedy the flooded passenger compartment interior water damage caused by the HVAC Defect. Although Hadi's automobile insurance company covered a portion of the cost, Hadi was required to pay $500 as the deductible portion.

32.     Defendants failed to disclose the HVAC Defect which would have been material to Plaintiffs and the class. Had Defendants disclosed to Hadi that the class vehicles had a defective HVAC evaporator drain, or that she would have to pay for repairs/replacement of the HVAC Defect, she would not have purchased her class vehicle, or would have paid substantially less for it.

33.     At the dealership, Hadi requested that Defendants cover the cost of the repair under warranty and Defendants wrongfully refused to extend or cover the damage under the warranty.

**Plaintiff Jun Imaizumi**

34.     Plaintiff Jun Imaizumi ("Imaizumi") is currently a resident and citizen of Nassau County, State of New York, and formerly a resident and citizen of Hillsborough County, State of Florida.

35.     Imaizumi owns a 2020 Lexus RX SUV, which was purchased new in February of 2020, from an authorized Lexus dealership in Tampa, Florida.

36.     Imaizumi's class vehicle was manufactured, sold, distributed, marketed, and warranted by Defendants.

37.     Imaizumi purchased the class vehicle for his personal, family, and household use.

38.     Imaizumi expected his class vehicle to be of good and merchantable quality and not defective. He had no reason to know, or expect, that his vehicle's HVAC evaporator drain was susceptible to blockages described in this complaint, nor was he aware from any source prior to purchase of the unexpected, extraordinary, and costly maintenance steps Defendants suggest are necessary to prevent the development of mold. Had Imaizumi known these facts, he would not have bought his class vehicle or would have paid substantially less for it.

39.     Imaizumi first experienced water in his class vehicle's passenger compartment in September of 2023.

40.     Imaizumi was informed by the local authorized Lexus dealer's service

representative at that time that the HVAC drain blockage was the result of the improper design and materials used and that, had proper materials such as an evaporator hose with an insecticide tip, commonly known as an ARINIX® Tip, been used, the issue would not have occurred. Imaizumi is informed and believes that the ARINIX® Tip part costs approximately $30.

41.     As a result of the HVAC Defect, however, Imaizumi has suffered significant ascertainable loss, as he was quoted a price of approximately $7,500 to remedy the flooded passenger compartment interior water damage caused by the HVAC Defect. Although Imaizumi's automobile insurance company covered a portion of the cost, Imaizumi was required to pay approximately $500 as the deductible portion.

42.     Defendants failed to disclose the HVAC Defect which would have been material to Plaintiffs and the class. Had Defendants disclosed to Imaizumi that the class vehicles had defective HVAC evaporator drain, or that he would have to pay for repairs/replacement of the HVAC Defect, he would not have purchased his class vehicle, or would have paid substantially less for it.

43.     At the dealership, Imaizumi requested that Defendants cover the cost of the repair under warranty and Defendants wrongfully refused to extend or cover the damage under the warranty.

44.     Lexus is the luxury vehicle division of Japanese automobile manufacturer Toyota Motor Corporation ("TMC"), which has its principal place of business in Nagoya, Japan. The Lexus brand is marketed in more than 90 countries and territories worldwide and is Japan's largest-selling manufacturer of premium cars. It has ranked among the 10 largest Japanese global brands in market value. TMC's Lexus division is also headquartered in Nagoya, Japan and has operational centers in Brussels, Belgium, and Plano, Texas.[1]

45.     TMC maintains an extensive dealer network in and throughout the United

---

[1] https://en.wikipedia.org/wiki/Lexus

States. TMC maintains an extensive dealer network in and throughout this judicial district and the State of California and transports vehicles into the State of California for sale and lease to consumers, such as Plaintiffs and class members.

**Defendant Toyota Motor North America, Inc.**

46.     Defendant Toyota Motor North America, Inc. ("TMNA") is a corporation organized under the laws of the State of California. TMNA is a wholly owned subsidiary of TMC and is responsible for the sales and marketing, field inspections, and warranty responsibilities for TMC and its affiliated companies.[2] TMNA is the holding company for the sales, manufacturing, engineering, and research and development subsidiaries of TMC located in the United States. TMNA is in the business of designing, engineering, testing, validating, manufacturing, marketing, and selling TOYOTA and Lexus branded vehicles throughout the United States, including within the State of California, in which it is incorporated. TMNA is the parent company of Defendant Toyota Sales USA. While TMNA maintains its primary headquarters in Plano, Texas, it maintains substantial portions of its operations in California. A few examples follow:

**A.     TMNA Research & Development, Gardena, California.** TMNA's Research & Development, Gardena, is its research & development arm for North America, which is based in Gardena, California. Through TMNA R&D, Gardena, TMNA is engaged in the engineering design, vehicle evaluation, powertrain development & calibration, regulatory affairs, and alternative powertrain research for both its TOYOTA and Lexus vehicles manufactured or sold in North America.[3] TMNA maintains its R&D Gardena base of operations at 1630 West 186th Street, Gardena, CA 90248-3807. TMNA is the corporate parent of all relevant TOYOTA entities, including but not limited to Toyota Motor Manufacturing, Kentucky, Inc.; Toyota Motor Manufacturing, Indiana, Inc.; Toyota Motor Manufacturing Canada

---

[2] *See* https://www.toyota.com/usa/operations/map/tcal
[3] https://www.toyota.com/usa/operations/map/ttc_gardena

Inc.; Toyota Motor Manufacturing Mississippi Inc.; Toyota Motor Manufacturing, Texas, Inc.; Toyota Motor Manufacturing de Baja California; Toyota Financial Services; Toyota Motor Sales, U.S.A., Inc.; Toyota Motor Engineering & Manufacturing North America, Inc.; and Toyota Motor Credit Corporation.

**B**.    **Toyota Auto Body Company, Inc., California.** Almost 50 years ago, the Toyota Defendants opened their first manufacturing facility in the United States in Long Beach, California, referred to as the Toyota Auto Body Company ("TABC"). Ever since, TABC has been in the forefront of building the company's reputation for quality. Currently, with 300 team members, TABC is a primary supplier of parts for certain Toyota vehicles and components— everything from sheet metal to steering columns, from catalytic converters to sub-assemblies, and more— for use in its manufacturing operations in the U.S. and for export to Japan. TABC maintains its base of operations at 6375 North Paramount Boulevard, Long Beach, CA 90805.[4]

**C.**    **TMNA's Substantial Multi-Million Dollar Investment in Its Manufacturing Facilities in California.** Earlier last year, TMNA announced it would invest $27 million on top of the $485 million spent to date to support an increase in TABC's production capabilities. Chris Reynolds, executive vice president, Corporate Resources, TMNA noted "Toyota's roots in California run deep" and "[t]his investment demonstrates our continued commitment to doing business in the Golden State, investing in our operations across the United States and building where we sell."[5]

**Defendant Toyota Motor Sales, U.S.A., Inc.**

47.    Defendant Toyota Motors Sales, U.S.A., Inc. ("Toyota Sales USA") is a wholly owned subsidiary of TMNA and is incorporated in in the State of California. Although its primary headquarters is located in Plano, Texas, it continues to have

---

[4] https://pressroom.toyota.com/good-as-gold-tabc-the-can-do-plant-celebrates-50-years-of-success/
[5] https://pressroom.toyota.com/27-million-investment-to-expand-toyotas-long-beach-manufacturing-capabilities/

substantial operations in California. Upon information and belief, the sales materials disseminated throughout the United States to dealerships is created and designed in California. In addition, California is the state in which TOYOTA and Lexus vehicles manufactured elsewhere are shipped into the United States and Toyota Sales, USA is integrally involved in the sales and distribution of those imported vehicles and materials from the port of entry to dealerships throughout the United States. In addition, Toyota Sales, USA oversees the sales of TOYOTA and Lexus products in 49 states through a network of over 1,200 TOYOTA dealers (of whom more than 900 also previously sold SCION vehicles) and over 200 Lexus dealers. California maintains the greatest number of authorized TOYOTA dealerships of any other state at 172 dealerships.[6] Toyota Sales USA is a wholly owned subsidiary of TMNA, which in turn, is a wholly owned subsidiary of TMC.

48.    Toyota Sales USA, through its Lexus division, is responsible for the marketing and sales of the class vehicles, including all versions of the brochures, communications with dealers about the class vehicles, and the maintenance and service of the class vehicles. It is also the warrantor for portions of the limited warranties offered by Defendants against defects in materials or workmanship which apply to all class vehicles sold or leased by authorized Toyota dealers in the United States and New Jersey and/or Florida, including Plaintiffs' class vehicles. That warranty's coverage is automatically transferred at no cost to subsequent vehicle owners.

49.    Plaintiffs refer to TMNA and Toyota Sales USA jointly and severally as "Defendants."

50.    At all relevant times, TMC (itself and through its related entities) engaged in the business of designing, selling, manufacturing, marketing, distributing, servicing and warranting class vehicles.

---

[6]https://en.wikipedia.org/wiki/Toyota_Motor_Sales,_USA#:~:text=TMS%20oversees%20the%20sales%20of,other%20state%20at%20172%20dealerships.

51.    TMC's Lexus division claims it is "committed to creating luxury automobiles which are and will be among the finest ever built anywhere in the world" and that "Lexus is equally committed to setting a new standard for extraordinary customer satisfaction throughout the ownership cycle."[7]

52.    Upon information and belief, Defendants were responsible for the manufacture, materials, warranty and design of the class vehicles, including the defective HVAC evaporator drain.

53.    Upon information and belief, Defendants, and at all relevant times had, the contractual right to exercise, and in practice has exercised, control over the design of class vehicles, the manner of class vehicles' marketing, the scope of written warranties, the scope of repairs in practice to be covered under warranty, and representations made and facts withheld from consumers and the public about the HVAC Defect. Lexus has been directly involved in assisting, directing, and handling of class Member complaints regarding the HVAC Defect.

**PERSONAL JURISDICTION**

54.    This Court has personal jurisdiction over Defendants because Defendants TMNA and Toyota Sales USA are incorporated in this State and are authorized to do business in this judicial district and in the State of California, conduct substantial business in the State of California, and some of the material conduct and omissions giving rise to the complaint, took place in California. In addition, each Defendant intentionally avails itself of the markets within California for the promotion, sale, marketing, and distribution of its vehicles, including the class vehicles, and conducts a substantial portion of its manufacturing in California and imports its vehicles manufactured elsewhere into the ports of entry located in California for further sale and distribution to its authorized dealership network in the United States, and maintain more authorized dealers in the State of California than any other state. The exercise of jurisdiction would comport with notions of fair play and substantial

---

[7] Sec.gov/Archives/edgar/data/1019849/000095012402000556/k66280ex10-24.txt

justice.

55.    Each of these facts independently, but also all of these facts together, are sufficient to render the exercise of jurisdiction by this Court over Defendants permissible under traditional notions of fair play and substantial justice.

**APPLICABLE CONTROLLING LAW**

56.    Plaintiffs request damages on behalf of themselves and proposed class members, pursuant to the California Consumer Legal Remedies Act, the New Jersey Consumer Fraud Act, and based upon Defendants' common law breaches of warranty and fraud.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

57.    Plaintiffs bring this action for themselves and on behalf of proposed class members.

58.    As a result of the HVAC Defect, the HVAC evaporator drain in each of the class vehicles is susceptible to blockages from spider webs and other insect activity. These blockages force condensed water created by operation of the class vehicle's HVAC system to drain into the class vehicle's passenger compartment. The accumulation of excessive undrained water can, and in Plaintiffs' cases have damaged material components in the passenger compartment including the seat and carpeting, compromising the comfort, safety and enjoyment of class vehicle occupants, including class members, and requiring class members to pay substantial amounts of money for repairs.

59.    In addition, the damp conditions promote the growth of mold in the passenger compartment. The repairs associated with fixing these interior components far exceed the cost associated with installing the appropriate HVAC evaporator drain protective tip.

60.    Plaintiffs are informed and believe that a drain hose equipped with a protective insecticide tip or other appropriate hose design would prevent the drainage of accumulated evaporator water into the class vehicle's passenger compartment, thus

preventing the damage that the accumulation of water from the drainage causes in the interior passenger compartment.

61.    Defendants knew or should have known that the HVAC evaporator drain in class vehicles was defective in materials and design, and could cause water to drain into the passenger compartments of class vehicles.

62.    The installation of an appropriate drainage hose during manufacture would have saved countless class members time and money spent on repairs associated with the HVAC Defect. Defendants knew of the HVAC Defect prior to sale or lease of class vehicles.

63.    Prior to the manufacture and sale of the class vehicles, Defendants knew of the HVAC Defect through sources such as technical publications including but limited to Technical Service Information Bulletins ("TSIBs"); field inspections by its personnel; internal review committees, complaints made on public forums and social media by Lexus vehicle owners; previous recalls; and other internal sources unavailable to Plaintiffs without discovery.

64.    Further, despite their knowledge Defendants failed to inform Plaintiffs and class members of the HVAC Defect. Sharing this knowledge also could have saved countless class members time and money spent on repairs associated with the HVAC Defect.

**Defendants' Technical Service Information Bulletins Demonstrate Pre-Sale Knowledge of the HVAC Defect.**

65.    Defendants' knowledge of the HVAC Defect is also evident in TSIBs drafted and issued by Defendants concerning the HVAC evaporator drains in TOYOTA and Lexus vehicles, including class vehicles.

66.    For example, on April 28, 2014, Defendants, through Toyota Sales, USA, issued TSB T-SB-0033-14 entitled "HVAC Evaporator drain Hose Clogged Due to Insect Intrusion" to alert its dealers that vehicles could "exhibit a condition where the HVAC Evaporator drain Hose has become obstructed with an insect nest. An insect

repellent drain hose tip (ARINIX® Tip) is now available to help minimize future occurrences of this environmental condition. For some models, a new drain hose is required to properly fit the ARINIX® Tip." The bulletin indicated to its dealers that Toyota would not cover the installation of the ARINIX® Tip under warranty.

67.    Then, on May 12, 2014, Defendants through Toyota Sales USA (which listed the TSIB as coming from "Lexus, a division of Toyota Motor Sales, U.S.A.") issued a TSIB numbered L-SB-0018-14 for Lexus vehicles, and entitled "HVAC Evaporator drain Hose Clogged Due to Insect Intrusion." ("Lexus 2014 TSIB"). Similar to the earlier TSB for TOYOTA vehicles, the Lexus 2014 TSIB acknowledged that vehicles could experience the signature symptom of the "HVAC Evaporator drain Hose [becoming] obstructed with an insect nest." The Lexus 2014 TSIB advised dealers that "[a]n insect repellent drain hose tip (ARINIX® Tip) is now available to help minimize future occurrences of this environmental condition." Again, the bulletin indicated to its dealers that Defendants would not cover the installation of the ARINIX® Tip under warranty.

68.    The TSIB further instructed service centers that "[f]or some models, a new drain hose is required to properly fit the ARINIX® Tip." The ARNIX® Tip is an insect repellent drain hose tip which costs approximately $30. Figure 1 below depicts the ARINIX® Tip, which appears as a white cap, at the end of the drain hose:



*Figure 1: ARINIX® TIP*

69.    On July 26, 2021, Defendants through Toyota Sales issued another
Technical Service Information Bulletin L-SB-0024-21 (which listed the TSIB as
coming from "Lexus, a division of Toyota Motor Sales, U.S.A.") - entitled "HVAC
Evaporator drain Hose Clogged Due to Insect Intrusion" ("Lexus 2021 TSIB") which
added coverage to Lexus models from model years 2018 through 2022, including
Plaintiffs' class vehicles, and stated "Applicability has been updated to include 2018 –
2022 model year Lexus vehicles." Similar to the prior TSIBs, the Lexus 2021 TSIB
bulletin indicated to its dealers that Defendants would not cover the installation of the
ARINIX® Tip under warranty.

70.    Incredibly, despite stating that the prior referenced TSIBs were intended
to "minimize future occurrences of this environmental condition," Defendants neither
added the ARINIX® Tip to the class vehicles at the factory, nor offered the

ARINIX® Tip as an option for the $30 cost to be installed either at the factory or by the dealer or informed Plaintiffs or class members in any materials that the HVAC Defect existed and could be easily remedied with a $30 materials component.

**Defendants' Pre-Sale Knowledge of the HVAC Defect is also Demonstrated from a Prior Recall by Defendants.**

71.     Defendants also knew or should have known about the HVAC Defect from a 2013 recall of 870,000 vehicles with similar or identical insect blockage issues. In October of 2013, Defendants announced a recall of 870,000 model years 2012 and 2013 Toyota Camry vehicles. The recall concerned spider webs that were creating blockages in the HVAC system drainage tube causing water to drip inside the passenger compartment onto an airbag control module. The water was short circuiting the control module and causing unintended air bag deployment. The prior recall also serves as an admission that the HVAC Defect is a safety defect  and should be the subject of implied or express warranty coverage.

72.     The similar nature and large-scale recall which Defendants instituted in 2013 was further evidence of notice to Toyota that the class vehicles which suffered from a similar condition, from the same time period, had similar issues.

**Defendants Knew of the HVAC Defect Based on class Member Complaints on Public Online Forums.**

73.     Defendants monitor online bulletin boards and chat rooms of their Toyota and Lexus vehicle owners on a regular and continuous basis in connection with both its social media outreach and in connection with its legal obligations under the TREADS Act requiring manufacturers to monitor safety issues and inform NHTSA within five (5) days of any safety issues it becomes aware of through that monitoring effort.

74.     In connection with the HVAC Defect, many class vehicle owners posted complaints about the HVAC Defect on public online vehicle owner forums.

75.     The following is a small sampling of such complaints found on online

forums including Facebook and Club Lexus[8]

    i.    "My car is just 4 months old . I am getting water inside of it. The dealer on route 10 claims it is because of the sunroof drains getting clogged by the stuff from the tree. One person told me it is from spider web clogging it. The car has been with them for a week they cannot guarantee me it is not going to happen again." User Madbuyer August 2, 2016.

    ii.    "My 2017 RX has water accumulating in the passenger side foot well. I live in the northeast and am dealing with a high volume dealership. I brought the vehicle into service and they informed me that there have been multiple issues (3 in the last 5 weeks). The story I was given by my service consultant was that spiders boro [sic] into the AC drainage plug causing it to clog and backing water up into the cabin. The accumulating water causes black mold to form with explains the odd odor. Their solution is to pull out all carpeting and padding and perform mold remediation." User jrcaputo October 13, 2017.

    iii.    "I have had the same problem with my Lexus RX 2016. Bought in feb and had huge leak noticed in oct. Dealership has had my car for nearly 6 weeks - gave it back once with carpet still soaked. Says spider web clogged ac duct" User RM0104 November 18, 2016.

    iv.    "I have a RX450H I recently noticed my floor mat on my [driver] and passenger side is wet. Is there anyone in this group that can shed some light why this is happening?" "Thanks everyone for your advice. The problem was the AC drain" Anil Etwaroo July 17, 2023.

    v.    "Has anyone else had any issues with a 2022 RX350 with large amounts of water under the [passengers] carpet? The smell and amount of water is crazy. Dealership said it wasn't covered under warranty and to take it and have it detailed. They noted that a spider had made a nest in some tube!!" Douglas Hare July 15, 2023.

    vi.    "I have an AC drain leak in my 2020 RX 350 on the passenger side floor. Seems to be happening to a lot of people. When I took it to the dealer, they gave me standard response which is, AC drain is clogged by a spider web and not covered under warranty but your will fix it with us!" Hyman Shana September 3, 2022.

76.    As early as 2016, and likely earlier, Defendants were aware of the HVAC Defect causing issues for class members and owners of their Toyota and Lexus vehicles. In addition, Defendants were aware of the HVAC Defect based on, *inter alia*, the following sources:

A.    TSIBs and TSBs serve as admissions of Defendants' knowledge of the blockages and flooding into the cabin caused by the defective materials

---

[8] https://www.clubLexus.com/forums/rx-4th-gen-2016-2022/869775-water-inside-car-drain-clogged-merged-threads.html last visited August 22, 2023

and design;

B.     Knowledge of Lexus had of the large recall of air conditioner condensers due to blockages caused by insects by Toyota; and,

C.     Numerous and consistent class vehicle owner complaints made on online vehicle owner forums.

77.     Moreover, the large number and consistency of class Member complaints describing the HVAC Defect's propensity to cause a moldy odor to emit from the air-conditioning vents underscores the fact that class members considered the HVAC Defect to be a material issue to the reasonable consumer, particularly as it caused additional and separate physical damage to the vehicle.

78.     Certain class members have raised this issue with the authorized Lexus dealer's service or general manager, who have admitted that Lexus is aware that the problem occurs frequently and that Defendants know about the problem and prefer to handle it after the fact as a non-warranty "customer pay" item, rather than incur the cost of fixing the problem preemptively.

**The Applicable Warranties**

79.     Defendants sold class vehicles with a new vehicle "Basic Warranty" which included, among other warranties, protections to the vehicle's consumer purchaser and/or lessee against defects:

This warranty covers repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Lexus. …The warranty is for 48 months or 50,000 miles, whichever occurs first." …Warranty repairs will be made at no charge for parts and labor.

80.     The class vehicles were also sold subject to the implied warranty of merchantability and fitness for ordinary purposes.

**Defendants' Marketing of Class Vehicles**
**and Concealment of the HVAC Defect**

81.     The warranty is provided directly to the consumer purchaser and/or lessee of the class vehicle as it runs with the vehicle and, alternatively, to the extent it

is made to the authorized Lexus dealer, it is understood and is the uniform custom and practice that the consumer end purchaser and/or lessee is the intended third party beneficiary of the warranty.

82.    Defendants represented to Plaintiffs and the class that the Parts Warranty "is in effect for 12 months, regardless of mileage … [and] Any repair or replacement that becomes necessary because of a defect in the service part is warrantable."

83.    Both Defendants' New Vehicle Basic Warranty and Parts Warranty cover the HVAC Drain Hose, which is the part alleged to be defective and causes the passenger compartment flooding and water damages suffers from a materials and/or design defect.  Defendants' implied warranty of merchantability and fitness also runs with class vehicles.

84.    Based on Plaintiffs' experiences and reports from other consumers, Defendants have refused to cover repairs related to the HVAC Defect under either warranty, and instead requires class members pay out-of-pocket for these nonpermanent "fixes" of the HVAC Defect even if class members' vehicles were covered under the relevant warranty at the time. In addition, even if the failure is covered by the class Member's automobile insurance, class members are responsible for the deductible portion and must pay that out-of-pocket as well as incur the cost of delay and non-use of the vehicle as well as separate and independent physical damage to the vehicle.

85.    Upon information and belief, Defendants knowingly manufactured and sold the class vehicles with the HVAC Defect, while willfully concealing the true inferior quality and sub-standard performance of the class vehicles' HVAC system.

86.    Defendants, particularly Toyota Sales USA and TMNA, directly market the class vehicles to consumers via extensive nationwide, multimedia advertising campaigns on television, the Internet, billboards, print publications, mailings, and through other mass media.

87.    Although Defendants knew of the HVAC evaporator drain's inability to

properly drain because they failed to add the ARINIX® Tip protector knowing the HVAC evaporator drain hose commonly becomes blocked without the ARINIX® Tip protector added on, and Defendants knowingly concealed from Plaintiffs and class members the HVAC Defect which was a material defect, prior to their respective purchases of their class vehicles. This caused Plaintiffs and class members to form a reasonable belief and expectation that this issue would not emanate from class vehicles' HVAC system and certainly caused the reasonable consumer not to expect that the vehicle itself would become flooded and physically damaged, resulting in the growth of organic materials regularly giving rise to foul odors, making the use of class vehicles anything but marketable.

88.     Plaintiffs and class members were exposed to the long-term, national, multimedia marketing campaign of Defendants, particularly TMNA and Toyota Sales USA, touting the supposed high quality and marketability of the class vehicles, and class members justifiably made their decisions to purchase and/or lease their class vehicles based on said Defendants' misleading marketing that concealed the true defective nature of the class vehicles' HVAC Defect.

89.     Further, Defendants knowingly misled class members (who were reasonable consumers) about the true defective nature of the class vehicles. As detailed above, Defendants have been aware of the HVAC Defect since at least 2014, and likely earlier, through TSIBs, TSBs, the high number of HVAC evaporator drain servicing and replacement component part sales, and the numerous and consistent complaints about the HVAC Defect made and posted in public online forums.

90.     Defendants have actively concealed the existence and nature of the HVAC Defect from class members since at least 2014 despite their knowledge of the existence and pervasiveness of the HVAC Defect, and certainly well before Plaintiffs and class members purchased or leased their respective class vehicles. Specifically, Defendants have:

A.     Knowingly concealed from class members, prior to, at and after the time

of purchase, lease, and/or service, of the class vehicles, the presence and
existence of the HVAC Defect;

B.     Knowingly concealed from class members prior to, at and after the time
of purchase, lease, and/or service, that the class vehicles' HVAC
evaporator drain was defective and was not fit for its intended purposes;

C.     Knowingly concealed the fact that the class vehicles' HVAC evaporator
drain was defective, despite the fact that Defendants learned of the
HVAC Defect as early as 2014, based on the multiple TSIBs and TSBs to
authorized dealerships issued by Defendants TMNA and Toyota Sales
USA and likely even earlier;

D.     Knowingly concealed the existence and pervasiveness of the HVAC
Defect even when directly asked about it by class members during
communications with Lexus Customer Assistance, Lexus dealerships,
and Lexus service centers;

E.     Actively concealed the HVAC Defect by forcing class members to bear
the cost of repairs;

F.     Actively concealed the material HVAC Defect by knowingly omitting to
reveal that a preventative material replacement, e.g., the ARNIX® Tip
protector for the HVAC evaporator drain existed and could have been
installed to thereby prevent the blockages from occurring and reoccurring
because the HVAC evaporator drain hose otherwise remained defectively
designed and lacking in the proper and necessary material installation.

91.    By engaging in the conduct described above, Defendants concealed, and
continue to conceal, the material HVAC Defect from class members. Plaintiffs and all
class members have been injured because, if Plaintiffs and the class members had
knowledge of the information,  they would not have bought or leased the class
vehicles or would have paid less for them.

**Fraudulent Concealment and Material Omission Allegations**

92.    Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals related to Defendants responsible for disseminating false and misleading marketing materials and information regarding the class vehicles. Defendants are necessarily in possession of or have access to all of this information. Plaintiffs' claims arise out of Defendants' knowing material omission and/or concealment of the HVAC Defect. Plaintiffs and class members allege that at all relevant times, including specifically at the time they purchased or leased their class vehicles, Defendants knew, or were reckless in not knowing, of the HVAC Defect; Defendants were under a duty to disclose the HVAC Defect based upon its exclusive knowledge of it, its affirmative representations about it, and its concealment of it. Defendants failed to disclose the HVAC Defect to the Plaintiffs and class members or the public at any time or place or in any manner.

93.    Plaintiffs and class members herein make the following specific fraud allegations with as much specificity as possible although they do not have access to information necessarily available only to and peculiarly within the knowledge of Defendants:

a.    ***Who***: Defendants (and particularly Toyota Sales USA who prepared advertising materials and specifications for class vehicles and its agents who operated authorized Lexus dealerships which sold class vehicles directly to consumers) actively concealed the HVAC Defect which was material to the purchaser and affected class vehicle value from Plaintiffs and class members while simultaneously touting the comfort and quality of the class vehicles, as alleged above. Plaintiffs and class members are unaware of, and therefore unable to identify, prior to discovery, the true names and identities of specific individuals related to Defendants who are responsible for such decisions, as alleged above except to state that these decisions were made by executives in the marketing and

1           engineering divisions of Defendants.

2     b.     **What**: Defendants knew that the class vehicles incorporated the HVAC

3           Defect. Defendants (and particularly Toyota Sales USA and its agents

4           who operated authorized Lexus dealerships which sold class vehicles

5           directly to consumers) concealed the HVAC Defect and also made

6           contrary representations about the comfort, and quality of the class

7           vehicles, as specified above in paragraphs above. Defendants intended to

8           defraud the Plaintiffs by omitting material information concerning the

9           HVAC Defect particularly since they were aware of the defect prior to

10           the commencement of class vehicle sales.

11     c.     **When**: Defendants concealed material information regarding the HVAC

12           Defect at all times and made representations about the quality of the class

13           vehicles, starting no later than 2014, or at the subsequent introduction of

14           certain models of class vehicles to the market, continuing through the

15           time and point of sale/lease, and on an ongoing basis, and continuing to

16           this day, as alleged *supra*. Defendants have never taken any action to

17           inform consumers about the true nature of the HVAC Defect in class

18           vehicles. And when consumers brought their class vehicles to authorized

19           Lexus dealerships complaining of the HVAC Defect, the dealers only

20           then admitted that Defendants were aware of the HVAC Defect but

21           denied any responsibility for bearing the cost of the HVAC evaporator

22           drain HVAC Defect. With regard to each Plaintiff, Defendants

23           concealed and materially omitted the HVAC Defect prior to the time they

24           purchased their respective class vehicles, which in the case of Dong, was

25           August 2023; in the case of Hadi was July 2022; and in the case of

26           Imaizumi was Feb. 2020.

27     d.     **Where**: Defendants (and particularly Toyota Sales USA who prepared

28           advertising materials and specifications for class vehicles and its agents

who operated authorized Lexus dealerships which sold class vehicles directly to consumers) concealed material information regarding the true nature of the HVAC Defect in every communication they had with Plaintiffs and class members and made contrary representations about the quality of the class vehicles. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manual, or on Defendants' website or at the point of sale or earlier.

e.   ***How***: Defendants (and particularly Toyota Sales USA who prepared advertising materials and specifications for class vehicles and its agents who operated authorized Lexus dealerships which sold class vehicles directly to consumers) materially omitted and concealed the HVAC Defect from Plaintiffs and class members and made representations about the quality of the class vehicles as discussed, *supra*. Defendants actively concealed the truth about the existence and nature of the HVAC Defect from Plaintiffs and class members at all times, even though they knew about the HVAC Defect and knew that information about the HVAC Defect would be materially important to a reasonable consumer and Defendants failed to identify the HVAC Defect in any and all class vehicle marketing materials and sales brochures.

f.   ***Why***: Defendants (and particularly TMS who prepared advertising materials and specifications for class vehicles and its agents who operated authorized Lexus dealerships which sold class vehicles directly to consumers) actively concealed and/or intentionally omitted material information about the HVAC Defect in class vehicles for the purpose of inducing Plaintiffs and class members to purchase or lease class vehicles, rather than purchasing or leasing competitors' vehicles and made representations about the world-class quality of the class vehicles. Had

Defendants disclosed the truth, for example in its advertisements or other materials or communications, or at the point of sale, Plaintiffs (and reasonable consumers) would have been aware of it, and would not have bought class vehicles or would have paid less for them. In addition, Defendants' dealerships revealed to certain class members that Defendants were well aware of the HVAC Defect but preferred to address it only after it materialized, and the passenger compartments of vehicles were flooded because it was less expensive for Defendants to handle it that way and pass the cost and aggravation onto the class members.

## TOLLING OF THE STATUTES OF LIMITATIONS

### Fraudulent Concealment Tolling

94.    Defendants have known of the HVAC Defect in the class vehicles since at least 2014, and concealed from or failed to notify Plaintiffs, class members, and the public of the full and complete nature of the HVAC Defect, even when directly asked about it by Plaintiffs and class members during communications with Defendants, Lexus Customer Assistance and authorized Lexus dealerships. Defendants continue to conceal the HVAC Defect to this day.

95.    Any applicable statute of limitation has been tolled by Defendants' knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

### Estoppel

96.    Defendants were and are under a continuous duty to disclose to Plaintiffs and class members the true character, quality, and nature of the class vehicles. Defendants actively concealed – and continue to conceal – the true character, quality, and nature of the class vehicles and knowingly made misrepresentations about the quality of the class vehicles. Plaintiffs and class members reasonably relied upon Defendants' knowing and affirmative representations and/or active concealment of

these facts as alleged herein. Based on the foregoing, Defendants are estopped from relying on any statute of limitation in defense of this action.

**Discovery Rule**

97.     The causes of action alleged herein did not accrue until Plaintiffs and class members discovered that their class vehicles incorporated the HVAC Defect.

98.     In the case of Hadi, that occurred in or about July, 2023, when her interior passenger compartment flooded and she brought her class vehicle in for an appointment at an authorized Lexus dealer, at which point she was given the diagnosis of an insect blockage and given the estimate of approximately $8,000 to repair the interior.

99.     In the case of Imaizumi that occurred in or about September, 2023 when his interior passenger compartment flooded and he brought the class vehicle in for an appointment at the dealer, at which point he was given the estimate of approximately $8,000 to repair the passenger compartment.

100.    In the case of Dong that occurred in or about December 2023 when her interior passenger compartment flooded and she brought the class vehicle in for an appointment at the dealer, at which point she was given the estimate of approximately $12,000 to repair the passenger compartment.

101.    Plaintiffs and class members had no realistic ability to discern that the class vehicles were defective until—at the earliest–after the HVAC Defect caused their passenger compartments to fill with water and cause separate physical damage to the vehicle. Even then, Plaintiffs and class members had no reason to know the water in their passenger compartment was caused by a defect in the class vehicles because of Defendants' active concealment of the HVAC Defect. Plaintiffs and class members were not reasonably able to discover the HVAC Defect until after they had purchased or leased the class vehicles, despite their exercise of due diligence, and their causes of action did not accrue until, at earliest, they discovered that the HVAC Defect was causing their passenger compartments to become flooded.

**CLASS ACTION ALLEGATIONS**

102.    Plaintiffs initiate this lawsuit as a class action on behalf of themselves and all other similarly situated individuals pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and/or 23(c)(4). Plaintiffs allege that the within action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions. Plaintiffs assert this class action on behalf of themselves and all other similarly situated members of the proposed class (the "class") and Statewide Subclasses, defined as follows:

**Nationwide class:**

All purchasers or lessees of class vehicles who purchased a class vehicle in the United States and its territories and possessions

**California Subclass:**

All purchasers or lessees of class vehicles who purchased a class vehicle in the State of California

**New Jersey Subclass:**

All purchasers or lessees of class vehicles who purchased a class vehicle in the State of New Jersey

103.    "Class vehicles" are defined as a vehicle of any of the following models/model years, 2015-2022, which Defendants themselves identified as possessing the HVAC Defect in the respective TSIBs:

> Lexus CT 200h,
> Lexus Es 350,
> Lexus Es 300h,
> Lexus GX 460,
> Lexus HS 250h, LFA,
> Lexus LS 460, LS 600hL,
> Lexus RX 350,
> Lexus RX 350 (NAP), and
> Lexus RX 450h.

104.    Excluded from the class are: (1) Defendants, and any entity or division in which Defendants or any of them have a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the judge to whom this

case is assigned and the Judge's staff; (3) governmental entities; and (4) claims for personal injuries resulting from the facts alleged herein. Plaintiffs reserve the right to amend the class definitions if discovery and further investigation reveal that the class should be expanded, divided into subclasses, or modified in any other way.

**Numerosity**

105.   Although the exact number of class members is uncertain and can only be ascertained through appropriate discovery, the number is in the tens of thousands or hundreds of thousands, upon information and belief, such that joinder is impracticable. The disposition of the claims of these class members in a single action will provide substantial benefits to all parties and to the Court. class members are readily identifiable from information and records in Lexus's possession, custody, or control, as well as from records kept by individual state motor vehicle departments.

**Typicality**

106.   The claims of Plaintiffs are typical of the claims of class members in that the Plaintiffs, like all class members, purchased and/or leased a class vehicle designed, manufactured, distributed, and sold by Defendants TMNA and Toyota Sales USA. Plaintiffs, like all class members, have been damaged by the misconduct of TMNA and Toyota Sales USA in that they have purchased a vehicle they would not have purchased, or for which they would have paid less, and incurred or will incur the cost and time spent for service and repair relating to and caused by the HVAC Defect. Furthermore, the factual bases of Defendants' misconduct are common to the Plaintiffs and all class members and represent a common thread of misconduct resulting in injury to the Plaintiffs and all class members.

**Adequate Representation**

107.   Plaintiffs will fairly and adequately represent and protect the interests of the class members. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective automotive vehicles.

108.   Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the class, and have the financial resources to do so. Neither Plaintiffs nor their counsel have interests adverse to those of the class.

**Predominance of Common Issues**

109.   There are numerous questions of law and fact common to Plaintiffs and class members, the answers to which will advance resolution of the litigation as to all class members, and which predominate over any individual question. These common legal and factual issues include:

A.   whether the HVAC evaporator drain in the class vehicles is defective;

B.   whether Defendants knew or should have known about the HVAC Defect, and, if so, how long Defendants knew or should have known of the HVAC Defect;

C.   whether the defective nature of the class vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a class vehicle;

D.   whether Defendants had and/or have a duty to disclose the defective nature of the class vehicles to Plaintiffs and class members;

E.   whether Defendants omitted and failed to disclose material facts about class vehicles;

F.   whether Defendants' concealment of the true defective nature of class vehicles induced Plaintiffs and class members to act to their detriment by purchasing class vehicles;

G.   whether Defendants represented, through their words and conduct, that class vehicles had characteristics, uses, or benefits that they did not actually have, in violation of the California Consumer Legal Remedies Act ("CLRA") and New Jersey's Consumer Fraud Act ("NJCFA");

H.   whether Defendants represented, through their words and conduct, that the class vehicles were of a particular standard, quality, or grade when

they were of another, in violation of the implied warranty and/or the CLRA and NJCFA;

I.     whether Defendants advertised the class vehicles with the intent not to sell them as advertised, in violation of the CLRA and NJCFA;

J.     whether the class vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability;

K.     whether Plaintiffs and the other class members are entitled to a declaratory judgment stating that the HVAC evaporator drain in class vehicles are defective and/or not merchantable;

L.     Whether Plaintiff and the class are entitled to damages based upon class-wide diminution of value, payment of a price premium and/or out-of-pocket damages.

M.     whether Defendants should be declared financially responsible for notifying class members of the problems with the class vehicles and for the costs and expenses of permanently remedying the HVAC evaporator drain HVAC Defect in the class vehicles; and,

N.     whether Defendants are obligated to inform class members of their right to seek reimbursement for having paid to diagnose, service, repair, or replace the defective HVAC evaporator drain.

**Superiority**

110.   Plaintiffs and class members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

111.   Absent a class action, most class members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of the individual class members' claims, it is likely that only a few class members could afford to seek legal redress for

Defendants' misconduct. Absent a class action, class members will continue to incur damages, and Defendants' misconduct will continue without remedy.

112.    Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

## FIRST CLAIM FOR RELIEF
## BREACH OF IMPLIED WARRANTY
**(On Behalf of Plaintiffs and the Nationwide Class against All Defendants)**

113.    Plaintiffs incorporate by reference each allegation set forth in paragraphs 1 through 112 as if set forth in full here.

114.    When Defendants sold the class vehicles, Defendants extended an implied warranty to class members that the class vehicles were merchantable and fit for the ordinary purpose for which such goods were sold.

115.    Persons who purchased a class vehicle from Defendants are entitled to the benefit of their bargain: a vehicle with a non-defective HVAC evaporator drain that properly drains water and does not allow HVAC condensation to drain into the passenger compartment.

116.    Defendants breached this implied warranty in that its class vehicles are: (1) not fit for ordinary use; and, (2) not of a merchantable quality.

117.    Had the fact that the HVAC Defect existed been disclosed at the time of sale, the class vehicles could not have been sold, or could not have been sold at the same price.

118.    To the extent reliance is required, reliance was present on the part of each Plaintiff and is presumed under the present circumstances.

119.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and class members have been damaged in an

amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF THE CALIFORNIA CONSUMER
## LEGAL REMEDIES ACT,
### Cal. Civ. Code §§ 1750 *et seq.*

**(On Behalf of Dong and the California Subclass against All Defendants)**

120.    Proposed California class representative Dong and California Subclass members incorporate by reference each allegation set forth in paragraphs 1 through 112 as if set forth in full here.

121.    Dong asserts this count on behalf of herself and members of the California Subclass.

122.    Defendants violated Cal. Civ. Code § 1770(a)(5) by representing that class vehicles have characteristics, uses, benefits and/or quantities they do not possess.

123.    Defendants violated Cal. Civ. Code § 1770(a)(7) by representing that class vehicles are of a particular standard, quality or grade, when they are not, and in particular, by supplying vehicles that have a defect that involves an unreasonable safety issue as described in this complaint.

124.    Defendants violated Cal. Civ. Code § 1770(a)(9) by advertising class vehicles with the intent not to sell them as advertised.

125.    Defendants violated Cal. Civ. Code § 1770(a)(16) by representing that the subject of a transaction has been supplied in accordance with a previous representation when it was not.

126.    Defendants conducted the above-described acts or practices in transactions intended to result, or that did result, in the sale of class vehicles to customers for personal, family or household use.

127.    The nature of the alleged defect, as a safety issue and/or as a defect that

goes to the essential functioning of the vehicle and/or as a defect of which Defendants had exclusive knowledge, imposes a duty to disclose the HVAC Defect upon Defendants. This is true regardless of the transactional relationship with the vehicle owner.[9]

128.   Defendants breached their duties under the CLRA by omitting material information concerning the HVAC Defect (including electrical system safety issues) and the fact that it would result in extensive damage to the vehicle's interior and mold, fungus and other unsafe air quality issues unless repaired at significant expense to Dong and the California Subclass members. Had Defendants revealed the existence of the material HVAC Defect, Dong and the California Subclass members would not have purchased their class vehicles or if they had, they would have done so at significantly lesser cost and therefore paid a price premium as a result of the material omission by Defendants.

129.   Dong and the California Subclass members relied on Defendants' affirmative representations that no additional maintenance would be required for the subject class vehicle's HVAC evaporator drain system outside out of the regularly recommended maintenance schedule. *See* 2021 Lexus RX 450h Owner's Manual at pp. 359-365. If Dong and California Subclass members had been made aware of the defects in their respective class vehicle's HVAC evaporator drain system and the attendant ramifications of their respective vehicle's diminution in value, future cost of repairs, durability and care, they would not have purchased the class vehicles or paid less since each class member believed they were purchasing vehicles without major defects and were not informed of true characteristics and attributes of class vehicle's HVAC evaporator drain system defects.

---

[9] Defendants had a duty to disclose because (1) the defective Evaporator Drain at issue relates to an unreasonable safety hazard and/or (2) the defective Evaporator Drain is material to the class vehicle's HVAC function as alleged in this complaint. Additionally, Defendants had exclusive knowledge of material facts not known to the Plaintiffs; (3) Defendants actively concealed the HVAC Defect from the Plaintiffs; and/or (4) Defendants made partial representations but otherwise suppressed material facts.

130.  To the extent relevant, Paragraph 93, subdivisions (a) through (f) hereinabove, are expressly incorporated herein with respect to the who, what when, where, how and why concerning the knowing and actionable material omissions of Defendants with regard to the HVAC Defect.

131.  As a result of Defendants' conduct, and knowing material omission, Dong and the California Subclass members were harmed and suffered actual damages and compensatory damages in the form of diminution of value, payment of a price premium, payment for the cost of repairs in that their respective class vehicles experienced interior passenger HVAC water leaks. As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Dong and California Subclass members, suffered and will continue to suffer actual damages.

132.  CLRA claims commenced to run against Dong and California Subclass members in December 2023, which when Dong discovered the cause of the flooding in her passenger cabin. Dong could not have discovered the HVAC Defect earlier despite reasonable diligence because Defendants' knowing concealment and/or intentional omissions and other conduct as described in this complaint.

133.  On January 12, 2023, Dong sent Defendants a pre-suit notice notifying Defendants of the violations of the CLRA pursuant to Cal. Civ. Code § 1782, requesting compensatory damages for Plaintiff and the California Subclass and Defendants failed to provide the relief requested within thirty (30) days of receipt thereof.

134.  Defendants violated the CLRA and committed other unfair and deceptive business practices as described in this complaint. Dong and California Subclass members request judgment against Defendants. Dong and California Subclass members further request costs and attorneys' fees and all other relief authorized by the CLRA Act together with such additional relief as appropriate and necessary.

## THIRD CLAIM FOR RELIEF

## VIOLATIONS OF NJCFA

### (On Behalf of Hadi and the New Jersey Subclass)

135.    Proposed New Jersey class representative Hadi and New Jersey Subclass members incorporate by reference each allegation set forth in paragraphs 1 through 112 as if set forth in full here.

136.    The NJCFA states in pertinent part as follows:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . .

N.J.S.A. § 56:8-2.

137.    Defendants are each a "person" as defined by the NJCFA. N.J.S.A. § 56:8-1(d).

138.    The purchase or lease of class vehicles by Hadi and New Jersey Subclass Members constituted "merchandise" as defined by the NJCFA. N.J.S.A. § 56:8-1 and § 56:8-2.

139.    By knowingly concealing the defective nature of the class vehicles to Plaintiffs and class members, Defendants violated the NJCFA, because such information was a material fact that a reasonable consumer would want to know and the omission thereof was material to a reasonable consumer.

140.    Defendants represented that the class vehicles had characteristics and benefits that they do not possess, and represented that the class vehicles were of the highest standard, quality, or grade for a luxury vehicle when they were of another.

141.    Defendants' unfair and deceptive acts or practices occurred repeatedly in Defendants' course of trade or business, were material, were capable of deceiving a

substantial portion of the purchasing public, and as a result, caused economic harm to owners and purchasers of the class vehicles.

142.   Defendants knew, by 2014 at the latest, and certainly before the sale or lease of the class vehicles, that class vehicles' HVAC evaporator drain suffered from an inherent defect, would exhibit problems such water drainage into the passenger compartment of class vehicles, and were not suitable for their intended use.

143.   By 2014 at the latest, Defendants had exclusive knowledge of material facts concerning the existence of the HVAC Defect in its class vehicles. Yet, Defendants actively concealed this HVAC Defect from consumers at and prior to the time of purchase and failed to offer class members a permanent solution to the HVAC Defect.

144.   Defendants were under a duty to Hadi and New Jersey Subclass members to disclose the defective nature of the HVAC evaporator drain, as well as the associated costs that would have to be expended in order to repair or replace the class vehicles interior carpeting and seating due to the HVAC Defect and the resulting additional and separate physical damage to the vehicle it caused.

145.   Defendants were in a superior position to know the true state of facts about the HVAC Defect in the class vehicles;

146.   Hadi and New Jersey Subclass members could not reasonably have been expected to learn or discover that the class vehicles had the HVAC Defect until, at the earliest, the first instance of the issue occurring.

147.   Defendants knew that Hadi and New Jersey Subclass members could not reasonably have been expected to learn or discover the HVAC Defect prior to its manifestation.

148.   Defendants knew or should have known that their conduct violated the NJCFA.

149.   In failing to disclose the defective nature of the class vehicles, and/or denying and misleading as to the true cause and remedy of the noxious foul odor,

Defendants knowingly and intentionally concealed material facts and breached their duty to not do so.

150.    The facts Defendants concealed from Hadi and New Jersey Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease a class vehicle. Moreover, a reasonable consumer would consider the HVAC Defect to be an undesirable quality, as Hadi and New Jersey Subclass members did. If Hadi and New Jersey Subclass members had known that the class vehicles had the HVAC Defect, they would not have purchased or leased a class vehicle, or would have paid less for them.

151.    Plaintiffs and class members, like all objectively reasonable consumers, did not expect the HVAC evaporator drain to drain water into their passenger compartments and cause damage to carpets and seats.

152.    To the extent relevant, paragraph 93, subdivisions (a) through (f), hereinabove, are expressly incorporated herein with respect to the who, what when, where, how and why concerning the knowing and actionable material omissions of Defendants with regard to the HVAC Defect.

153.    As a result of Defendants' misconduct, Hadi and New Jersey Subclass members have been harmed and suffered ascertainable damages and actual compensatory damages including that Plaintiffs and class members would not have purchased their vehicles for the price paid, or would not have purchased them at all had they known of the material HVAC Defect and as a result, paid an unconscionable, illegal and improper price premium which they would not have paid, diminution of value and payment of the cost of repairs.

154.    As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Hadi and New Jersey Subclass members suffered and will continue to suffer ascertainable losses in that they have experienced and may continue to experience their class vehicles' HVAC evaporator drain failing, resulting in water flooding into the passenger compartment of the vehicle causing physical damage, and

for which they must pay out-of-pocket.

155.    Defendants' violations present a continuing safety risk to Hadi and New Jersey Subclass members and to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

154.    Pursuant to N.J.S.A. § 56:8-2, Hadi and New Jersey Subclass members request actual and statutory damages, attorneys' fees and expenses, treble damages, and punitive damages as permitted under the NJCFA and applicable law.

## FOURTH CLAIM FOR RELIEF
## FRAUD BY OMISSION
### (On Behalf of All Plaintiffs and the Nationwide Class against All Defendants)

155.    Plaintiffs incorporate by reference each allegation set forth in paragraphs 1 through 112 as if set forth in full here.

156.    Defendants concealed and suppressed material facts concerning the quality of the class vehicles.

157.    Defendants concealed and suppressed material facts concerning the quality of the HVAC Evaporator drain in the class vehicles.

158.    Defendants concealed and suppressed material facts concerning the serious HVAC Evaporator drain HVAC Defect causing class vehicles' HVAC Evaporator drain to be more susceptible to blockages, which would cause water to drain into passenger compartments.

159.    Defendants knew that Plaintiffs and class members would not be able to inspect or otherwise detect the HVAC Defect prior to purchasing or leasing class vehicles. Defendants furthered and relied upon this lack of disclosure to further promote payments for the additional damage caused by the HVAC Defect to passenger compartment including carpets and seats – all the while concealing the true nature of the HVAC Defect from Plaintiffs and class members. Defendants further denied the very existence of the HVAC Defect and the propensity of blockages when

Plaintiffs and class members complained of the HVAC Defect.

160.    Defendants concealed and suppressed material facts that point to the nature of the HVAC Defect. In reality, an ARINIX® Tip (connector, water hose), as admitted by Defendants in their various TSIBs and TSBs to authorized dealers, would remedy the HVAC Defect and protect against the HVAC Evaporator drain causing flooding and physical damage to the class vehicle. Without this fix, the water damage caused by the HVAC Defect in the passenger compartment far exceeded the costs associated with the ARINIX® Tip.

161.    Defendants committed the foregoing acts and omissions in order to promote sales, boost confidence in their vehicles and falsely assure purchasers and lessees of Lexus vehicles, that the class vehicles were comfortable, warranted and reliable vehicles and concealed the information in order to prevent harm to Lexus and its products' reputations in the marketplace and to prevent consumers from learning of the defective nature of the class vehicles prior to their purchase or lease. These false representations and omissions were material to consumers, both because they concerned the quality of the class vehicles and because the representations and omissions played a significant role in the decision to purchase or lease the class vehicles and because the failure of the HVAC Evaporator drain to act in the manner intended and fail, caused separate and independent physical damage to class vehicles.

162.    Defendants had and continue to have a duty to disclose the HVAC Defect in the class vehicles because they were known and/or accessible only to Defendants. Defendants had superior knowledge and access to the facts and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiffs and class members.

163.    Defendants also had a duty to disclose because they made affirmative representations about the superior quality, warranty, and lack of defects in the class vehicles as set forth above, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding their actual quality, comfort, and usability. Even when faced with complaints regarding the

HVAC Defect, Defendants misled and concealed the true cause of the symptoms complained of.

164. As a result, class members were misled as to the true condition of the class vehicles once at purchase/lease and again when they complained of damage associated with the HVAC Defect.

165. The omitted and concealed facts were material because they directly impact the value, appeal, and usability of the class vehicles purchased or leased by Plaintiffs and class members. Whether a manufacturer's products are as stated by the manufacturer, backed by the manufacturer, and usable for the purpose it was purchased, are material concerns to a consumer.

166. Defendants actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, avoid recalls that would hurt the brand's image and cost money, and did so at the expense of Plaintiffs and class members.

167. On information and belief, Defendants have still not made full and adequate disclosure and continue to defraud Plaintiffs and class members and conceal material information regarding the HVAC Defect that exists in the class vehicles.

168. Plaintiffs and class members were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, i.e., they would not have purchased or leased class vehicles, or would have paid less for them. Plaintiffs and class members' actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or class members.

169. Because of the concealment and/or suppression of the facts, Plaintiffs and class members sustained damage because they negotiated and paid value for the class vehicles not commensurate of the HVAC Defect that Defendants failed to disclose and paid for temporary measures and replacement parts to attempt to remedy the HVAC Defect. Had they been aware of the concealed HVAC Defect that existed

in the class vehicles, Plaintiffs would have paid less for their vehicles or would not have purchased or leased them at all.

170.    Accordingly, Defendants were liable to Plaintiffs and class members for damages in an amount to be proven at trial.

171.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs and class members' rights and well-being to enrich themselves and save themselves the costs of repair both preemptively and post-damage. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves, and all others similarly situated, request the Court to enter judgment against Defendants, as follows:

i.      an order certifying the proposed class and/or any appropriate subclasses, designating Plaintiffs as named representative of the class, and designating the undersigned as class counsel;

ii.     an award to Plaintiffs and class members of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

iii.    an order requiring Defendants to disgorge, for the benefit of Plaintiffs and class members, all or part of the ill-gotten revenue it received from the sale or lease of the class vehicles, or make full restitution thereof to Plaintiffs and class members;

iv.     an award of attorneys' fees and costs, as allowed by law;

v.      an award of pre-judgment and post-judgment interest, as provided by law;

vi.     leave to amend this complaint to conform to the evidence produced at trial; and,

vii.    such other relief as may be appropriate under the circumstances.

# JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all issues triable by jury.

Dated: September 4, 2024          Respectfully submitted,

*/s/ S. Martin Keleti*
S. Martin Keleti (Bar #144208)
KELETI LAW
9903 Santa Monica Boulevard, Suite 751
Beverly Hills, California 90212-1671
Telephone: 323.308.8489
E-mail: s.martin.keleti@gmail.com

Gary S. Graifman*
**KANTROWITZ GOLDHAMER &
GRAIFMAN, P.C.**
135 Chestnut Ridge Road, Suite 200
Montvale, New Jersey 07645
Telephone: 201.391.7000
E-mail: ggraifman@kgglaw.com

Thomas P. Sobran*
**THOMAS P. SOBRAN, P.C.**
7 Evergreen Lane
Hingham, Massachusetts 02043
Telephone: 781.741.6075
E-mail: tsobran@sobranlaw.com

*admitted *pro hac vice*